# IN THE UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |
|---|---|
| BARBARA SPEAKS, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Civil Action No. 1:22-cv-01043 |
| v. | **JURY TRIAL REQUESTED** |
| LYONS MAGNUS, LLC, and | **COMPLAINT -- CLASS ACTION** |
| TRU ASEPTICS, LLC | |
| *Defendants*. | |

COMES NOW, Plaintiff Barbara Speaks, by and through counsel, on behalf of herself and others similarly situated for her Class Action Complaint against Lyons Magnus, LLC and TRU Aseptics, LLC ("Defendants"). Plaintiff Speaks states and alleges as follows:

## PRELIMINARY STATEMENT

1.       Plaintiff brings this action a result of Defendant's negligent failure to ensure the quality of their products. This negligent oversight led to the recall of certain beverages, liquid coffee, nutritional shakes, and other supplements due to *Cronobacter Sakazakii* bacteria contamination concerns. Recalled products included in products labeled under the brands Oatly, Stumptown, Glucerna, Intelligentsia, Aloha, Kate Farms, and Premier Protein.

## PARTIES

2.        Plaintiff Barbara Speaks is a resident of Thomasville, North Carolina. Ms. Speaks used Lyons-Magnus products for specific dietary purposes. Ms. Speaks was recommended Kate Farms Soul-Source by her dietitian. On or around June 1, 2022, Plaintiff Speaks consumed the Kate Farms product and began having stomach and intestinal issues soon after.

3.        Defendant, TRU Aseptics, LLC, (hereinafter "TRU Aseptics") is a subsidiary food service corporation wholly owned by Lyons Magnus, LLC. TRU Aseptics is believed to be the direct producer of Recalled Products. TRU Aseptics' headquarters are located at 2924 Wyetta Drive, Beloit, WI 53511.

4.        Defendant, Lyons Magnus, LLC, (hereinafter "Lyons Magnus") is a food service corporation with its headquarters in Fresno, California. Lyons Magnus' principal place of business is 3158 East Hamilton Avenue, Fresno, CA 93702. Defendant Lyons Magnus wholly owns Defendant TRU Aseptics.

<strong><u>JURISDICTION AND VENUE</u></strong>

5.        Diversity subject matter jurisdiction exists over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), amending 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions involving: (a) 100 or more members in the proposed class; (b) where at least some members of the proposed class have different citizenship from Defendants; and (c) where the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. 28 U.S.C. §§ 1332(d)(2) and (6).

6.        This District Court has personal jurisdiction over Defendants as the Defendants regularly and continuously conduct business in the jurisdiction. Additionally, this Court has specific personal jurisdiction over both Defendants as they have minimum contacts with the District given their regular, systematic, and continuous business conducted within this District.

7.      Venue is proper in this District under 28 U.S.C. § 1391(d) because a substantial part of the events or omissions giving rise to the claims in this action occurred in this District.

## BACKGROUND FACTS

8.      Defendants manufacture, market, advertise, label, distribute, and vend protein shakes, protein powders, dairy alternatives, nutritional shakes, coffee style drinks, and other nutritional supplements throughout the United States, including in this District.

9.      The Defendants' products (hereinafter "Recalled Products") at issue include, but are not limited to:[1]

- Lyons Ready Care Thickened Dairy Drink- Moderately Thick/Honey Consistency
- Lyons Care 2.0 High Calorie High Protein Nutritional Drink, Butter Pecan
- Lyons Care 2.0 High Calorie High Protein Nutritional Drink, Dark Chocolate
- Lyons Care 2.0 High Calorie High Protein Nutritional Drink, Vanilla
- Lyons Care Thickened Dairy Drink- Mildly Thick, Nectar Consistency
- Lyons Barista Style Almond Non-Dairy Beverage
- Lyons Barista Style Coconut Non-Dairy Beverage
- Lyons Barista Style Oat Non-Dairy Beverage
- Pirq Plant Protein Decadent Chocolate
- Pirq Plant Protein Caramel Coffee
- Pirq Plant Protein Golden Vanilla
- Pirq Plant Protein Very Strawberry
- Glucerna Original 8 fl. oz Tetra Carton 24 Count Club Case

---

[1] LYONS MAGNUS VOLUNTARILY RECALLS 53 NUTRITIONAL AND BEVERAGE PRODUCTS DUE TO THE POTENTIAL FOR MICROBIAL CONTAMINATION LYONS MAGNUS VOLUNTARILY RECALLS 53 NUTRITIONAL AND BEVERAGE PRODUCTS DUE TO THE POTENTIAL FOR MICROBIAL CONTAMINATION (2022), https://www.prnewswire.com/news-releases/lyons-magnus-voluntarily-recalls-53-nutritional-and-beverage-products-due-to-the-potential-for-microbial-contamination-301595828.html (last visited Dec 2, 2022).

- Aloha Chocolate Sea Salt Plant-Based Protein
- Aloha Coconut Plant-Based Protein
- Aloha Vanilla Plant-Based Protein
- Iced Coffee Plant Based Protein
- Intelligentsia ColdCoffee
- Intelligentsia Oat Latte
- Oatly Oat-Milk Barista Edition
- Premier Protein Chocolate
- Premier Protein Vanilla
- Premier Protein Café Latte
- MRE Cookies and Cream Protein Shake
- MRE Milk Chocolate Protein Shake
- MRE Salted Caramel Protein Shake
- MRE Vanilla Milk Shake Protein Shake
- Stumptown Cold Brew Coffee with Oat Milk Original
- Stumptown Cold Brew Coffee with Oat Milk Horchata
- Stumptown Cold Brew Coffee with Oat Milk Chocolate
- Stumptown Cold Brew Coffee with Cream and Sugar Chocolate
- Stumptown Cold Brew Coffee with Cream and Sugar Original
- Imperial Med Plus 2.0 Vanilla Nutritional Drink
- Imperial Thickened Dairy Drink- Moderately Thick/Honey Consistency
- Imperial Thickened Dairy Drink- Mildly Thick/Nectar Consistency
- Imperial Med Plus NSA 1.7 Vanilla Nutritional Drink

10.     Defendants' Recalled Products "support health", are "nutritional", and are often marketed as "alternatives" to other products, such as dairy.[2]

11.     Defendants' packaging and labeling further emphasize quality and safe ingredients that are suitable for consumption by physically vulnerable persons, young children, those who have specific dietary restrictions, or those seeking a healthier lifestyle.

## FACTUAL ALLEGATIONS

12.     At all times relevant, Defendants knew or should have known that their Recalled Products had a risk of containing harmful Bacteria or were not sufficiently tested for the presence of Bacteria. During this time, Defendants omitted any reference to the presence, or risk thereof, of harmful Bacteria.

13.     Defendants knew or should have known the risks that *Cronobacter Sakazakii* poses, especially to the elderly, very young, and immunocompromised. Defendants should have known that the standards for food safety have become increasingly stringent in recent years. Further, Defendants should have known of the dangers of *Cronobacter Sakazakii* due to recent powder supplement and food contaminations.

14.     Defendants knew or should have known that they owed consumers a duty of care to fully prevent, or at the very least, minimize the presence of harmful Bacteria in their Recalled Products.

---

[2] Glucerna original shake: Diabetic Snack Replacement shake, GLUCERNA (2022),
        https://glucerna.com/nutrition-products/glucerna-shakes-rich-chocolate (last visited Dec 2, 2022).;

Oatmilk Chilled, OATLY!, https://us.oatly.com/products/oatmilk-chilled (last visited Dec 2, 2022).;

CHOCOLATE PROTEIN SHAKE WITH ENERGY & IMMUNE SUPPORT PREMIER PROTEIN,
        https://www.premierprotein.com/products/chocolate-energy (last visited Dec 2, 2022).

5

15.     Defendants knew or should have known that they owed a duty of care to consumers to adequately test for harmful Bacteria in their Recalled Products.

16.     Defendants knew that consumers purchased the Recalled Products based on the reasonable expectation that Defendants manufactured the Recalled Products to the highest safety and sanitation standards, as to be fully fit for human consumption, particularly by those seeking a health supplement and the immunocompromised. Defendants knew or should have known that consumers would reasonably infer that Defendants would hold the Recalled Products to the highest sanitation and safety standards, as to prevent bacterial contamination.

17.     On August 1, 2022, Defendants recalled 53 products due to potential bacterial contamination. Particularly, the bacteria species *Cronobacter Sakazakii* was mentioned as a possible contaminant.[3]

18.     The Food and Drug Administration ("FDA") and Center for Disease Control ("CDC") have declared *Cronobacter Sakazakii* to be harmful to all persons, particularly individuals seeking a health supplement and the elderly, even noting that death is often a result of *Cronobacter Sakazakii* contamination.[4]

_____

[3] Wynne Davis, LYONS MAGNUS RECALLS 53 PRODUCTS INCLUDING ALTERNATIVE MILKS AND PROTEIN SHAKES NPR (2022), https://www.npr.org/2022/08/02/1115147605/lyons-magnus-protein-coffee-milk-products-recall (last visited Nov 30, 2022).

[4] Cronobacter, CENTERS FOR DISEASE CONTROL AND PREVENTION (2022), https://www.cdc.gov/cronobacter/index.html (last visited Dec 2, 2022).;

Center for Food Safety and Applied Nutrition, INVESTIGATION OF CRONOBACTER INFECTIONS FROM POWDERED INFANT FORMULA U.S. FOOD AND DRUG ADMINISTRATION, https://www.fda.gov/food/outbreaks-foodborne-illness/fda-investigation-cronobacter-infections-powdered-infant-formula-february-2022 (last visited Dec 2, 2022).

Case 1:22-cv-01043-TDS-JEP   Document 1   Filed 12/02/22   Page 6 of 21

19.     As previously stated, exposure to *Cronobacter Sakazakii* can lead to death, particularly when the individuals exposed are immunocompromised, children, or elderly persons.[5]

20.     Many of Defendants' products are marketed to vulnerable persons, particularly those seeking a health supplement, children, elderly, and the immunocompromised.

21.     Despite the known risks of *Cronobacter Sakazakii*, Defendants have recklessly and/or knowingly sold the Recalled Products without disclosing the possible contamination.

22.     Additionally, Defendants knew or should have known that possible consumers would ingest the Recalled Products daily, often multiple times per day, thus compounding the possible exposures to *Cronobacter Sakazakii*.

23.     Defendants' omissions are material, false, misleading, and reasonably likely to deceive the public. This is especially true, considering the long-standing campaign that markets the Recalled Products as healthy, safe, and high quality, as to induce customers to purchase the products.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class.

**The Class:**

All persons in the United States who purchased the Recalled Products for household or business use, and not for resale.

25.     Excluded from the Class are Lyons Magnus, LLC and TRU Aseptics, LLC and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and

---

[5] Id.

Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

26.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence that would be used to prove those elements in individual actions alleging the same claims.

27.     This action has been brought, and may be properly maintained, on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

28.     This action involves common questions of law and fact, which predominate over any questions affecting individual members of the Class, including, without limitation:

(a) Whether Defendants engaged in the conduct alleged herein;

(b) Whether Defendants owed a duty of care to Plaintiff and the Class;

(c) Whether Defendants knew or should have known that the Recalled Products contained, or may contain, *Cronobacter Sakazakii*;

(d) Whether Defendants wrongfully represented and continue to represent that the Recalled Products are natural and safe for human consumption;

(e) Whether Defendants wrongfully represented and continue to represent that the Recalled Products are healthy;

(f) Whether Defendants wrongfully represented and continue to represent that the Recalled Products are natural and/or healthy;

(g) Whether Defendants wrongfully represented and continue to represent that the Recalled Products are appropriate for consumption by various persons of all ages, particularly those seeking a health supplement;

(h) Whether Defendants wrongfully represented and continue to represent that the manufacturing of the Recalled Products is subjected to rigorous standards, including testing for *Cronobacter Sakazakii*;

8

(i) Whether Defendants wrongfully failed to disclose that the Recalled Products contained, or may contain, *Cronobacter Sakazakii* or other contaminants;

(j) Whether Defendants' representations in advertising, warranties, packaging and/or labeling are false, deceptive and misleading;

(k) Whether those representations are likely to deceive a reasonable consumer;

(l) Whether a reasonable consumer would consider the presence, or risk of, *Cronobacter Sakazakii,* as a material fact when purchasing the Recalled Products;

(m) Whether Defendants had knowledge that those representations were false, deceptive and misleading;

(n) Whether Defendants continue to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

(o) Whether representations that a product is healthy, of superior quality, nutritious, safe for consumption, and does not contain *Cronobacter Sakazakii,* are material to a reasonable consumer;

 (p) Whether Defendants' representations and descriptions on the labeling of the Recalled Products are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

(q) Whether Defendants breached their express warranties;

(r) Whether Defendants breached their implied warranties;

(s) Whether Defendants engaged in unfair trade practices;

(t) Whether Defendants engaged in false advertising;

(u) Whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

(v) Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(w) Whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and

(x) The amount and nature of relief to be awarded to Plaintiff and the other members of the Class.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

29.        Plaintiff's claims are typical of the claims of other members of the Class because all members were similarly situated and were comparably injured through Defendants' wrongful conduct, as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

30.        Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of other members of the Class that she seeks to represent. Further, Plaintiff has retained competent counsel that are experienced in complex litigation and Plaintiff intends to prosecute the action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

31.        A class action is superior to any other available means for the fair and efficient adjudication of this controversy. Also, no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other members of the Class are relatively small compared to the burden and expense that would be required to individually litigate their claims. As such, it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct.

32.        Even if members of the Class could afford individual litigation, the court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Certification of Specific Issues: Fed. R. Civ. P. 23(c)(4)**

33.     To the extent that any described Class herein does not meet the requirements of Rules 23(b)(2) or (b)(3), Plaintiff seeks the certification of issues that will drive this litigation toward resolution.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

34.     Defendants have acted, or refused to act, on grounds generally applicable to Plaintiff and other members of the Class. This act, or refusal to act, makes final injunctive relief and declaratory relief, as described herein, appropriate remedies, with respect to the other members of the Class.

## CAUSES OF ACTION

### FOR A FIRST COLLECTIVE CAUSE OF ACTION

**Breach of Express Warranty**

**(Plaintiff and Other Members the Class)**

35.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

36.     Plaintiff brings this count on behalf of herself and other members of the Class.

37.     Defendants marketed and sold the Recalled Products into the stream of commerce with the intent that the Recalled Products would be purchased by Plaintiff and the Class.

38.     Defendants expressly represented and warranted that the Recalled Products were healthy and safe for consumption by all persons, particularly those seeking a health supplement.

39.     Defendants made these express warranties regarding the Recalled Products' quality, ingredients, and fitness for consumption in writing on the Recalled Products' packaging and labels through its website, advertisements, and marketing materials. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Recalled Products.

11

40.     Defendants' advertisements, warranties and representations were made in connection with the sale of the Recalled Products to Plaintiff and the Class. Plaintiff and the Class relied on Defendants' advertisements, warranties, and representations regarding the Recalled Products in deciding whether to purchase the Recalled Products.

41.     Defendants' Recalled Products do not conform to Defendants' advertisements, warranties, and representations in that the Recalled Products are not safe or appropriate for human consumption, and contain, or may contain, harmful Bacteria.

42.     Defendants were on notice of this breach, as they were aware of the possibly included *Cronobacter Sakazakii* bacteria in the Recalled Products, as reflected in their own recall.

43.     The inclusion of unsafe levels of *Cronobacter Sakazakii* is material because unsafe levels of this bacteria rendered Defendants' Recalled Products unsafe because these Recalled Products now presented a significant, unreasonable risk of physical and cognitive harm. This risk renders the Recalled Products worthless or significantly less valuable when compared to a safe product of a similar nature or purpose.

44.     Plaintiff and the Class would not have purchased the lesser value Recalled Products had they known of the risk of sickness due to such contamination. Plaintiff and the Class purchased the Recalled Products due to the false or misleading representations and warranties and would not have purchased such Recalled Products if true facts had been disclosed.

45.     Privity exists because Defendants expressly warranted to Plaintiff and the Class through the warranting, packaging, marketing, and labeling that the Recalled Products were perfect for consumption and by failing to make any mention of the presence of *Cronobacter Sakazakii* or other harmful ingredients. All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiff and the other members of the Class.

46.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they purchased Recalled Products that were worth less than the price they paid, given the presence of harmful ingredients, or risk thereof. Plaintiff and the Class also would not have purchased the Recalled Products at all, had they known of the risk and/or presence of *Cronobacter Sakazakii*, and/or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

47.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available due to Defendants' failure to deliver goods conforming to their express warranties and resulting breach.

## FOR A SECOND COLLECTIVE CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability

### (Plaintiff and Other Members the Class)

48.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

49.     Plaintiff brings this count on behalf of herself and other members of the Class.

50.     Defendants are merchants engaging in the manufacturing and sale of goods that were purchased by Plaintiff and members of the Class.

51.     At all times mentioned herein, Defendants manufactured or supplied the Recalled Products and prior to the time the Recalled Products were purchased by Plaintiff and the Class, Defendants impliedly warranted to Plaintiff and Class Members that the Recalled Products were of merchantable quality, fit for their ordinary use (consumption by all ages of persons, particularly those seeking a health supplement), and conformed to the promises and affirmations of fact made on the Recalled Products' containers and labels, including that the Recalled Products were safe  and appropriate for consumption by physically vulnerable persons. Plaintiff and the Class relied on Defendants' promises and affirmations of fact when they purchased the Recalled Products.

52.     The Recalled Products were not fit for their ordinary use and did not conform to Defendants' affirmations of fact and promises as they contained, or were at risk of containing, *Cronobacter Sakazakii* or other non-conforming ingredients.

53.     Defendants breached their implied warranties by selling Recalled Products that failed to conform to the promises or affirmations of fact made on the container or label as each product contained *Cronobacter Sakazakii* or contaminants that do not conform to the packaging.

54.     Defendants were on notice of their breach, as Defendants were aware of the risks of bacterial contamination in the Recalled Products. Further, Defendants' awareness is demonstrated by the recall issued by Defendant Lyons Magnus. Had Defendants been unaware of such breach, Defendants would not have issued such a recall.

55.     Privity exists because Defendants impliedly warranted to Plaintiff and the Class through their warranting, packaging, advertising, marketing, and labeling that the Recalled Products were suitable for consumption and by failing to make any mention of bacterial contamination.

56.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Recalled Products that are now worth less than the price they paid, given the risk of and/or actual contamination of Recalled Products. Plaintiff and the Class would not have purchased the Recalled Products at all, had they known of the bacterial contamination issues.

57.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available as a result of Defendants' failure to deliver goods conforming to their implied warranties and resulting breach.

## FOR A THIRD COLLECTIVE CAUSE OF ACTION

### Fraudulent Misrepresentation

### (Plaintiff and Other Members the Class)

14

58.     Plaintiff realleges all preceding paragraphs as if fully set forth herein.

59.     Plaintiff brings this count on behalf of herself and other members of the Class.

60.     Defendants expressly represented and warranted that the Recalled Products were healthy, health promoting, and safe for consumption, especially by physically vulnerable persons or those seeking a nutritional supplement.

61.     Defendants intentionally, knowingly, and recklessly made misrepresentations to induce Plaintiff and the Class to purchase its Recalled Products.

62.     Defendants knew that its representations about the Recalled Products were false in that the Recalled Products contained, or were at risk of containing, unsafe levels of *Cronobacter Sakazakii* or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendants allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

63.     Plaintiff and the Class relied on these misrepresentations and purchased the Recalled Products to their detriment, given the lesser value of the product. Given the deceptive way Defendants advertised, represented, and otherwise promoted the Recalled Products, Plaintiff's and the Class's reliance on Defendants' misrepresentations was justifiable.

64.     As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased the Recalled Products that are worth less than the price they paid. Plaintiff and the Class were marketed a safe product, and would not have purchased at all had they known of the presence, or risk of thereof, of *Cronobacter Sakazakii*.

65.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.


**FOR A FOURTH COLLECTIVE CAUSE OF ACTION**

**Fraud by Omission**

**(Plaintiff and Other Members the Class)**

66.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

67.    Plaintiff brings this count on behalf of herself and other members of the Class.

68.    Defendants knowingly, intentionally, and materially misrepresented and omitted, concealed from, and failed to disclose to Plaintiff and the Class that its Recalled Products contained, or were at risk of containing, *Cronobacter Sakazakii*, or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

69.    Defendants had a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, suitability and risks of the Recalled Products because:

(1) Defendants were in a superior position to know the true state of facts about the Recalled Products;

(2) Defendants were in a superior position to know the actual ingredients, characteristics, and suitability of the Recalled Products for consumption by all ages of persons, particularly those seeking a health supplement; and

(3) Defendants knew that Plaintiff and the Class could not have reasonably been expected to learn or discover that the Recalled Products were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Protein, Supplements, Additives, and Drinks.

70.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class are material because a reasonable consumer would consider the safety of a product quite important when deciding whether to purchase Defendants' Recalled Products.

71.    Plaintiff and the Class justifiably relied on Defendants' omissions to their detriment. The detriment is evident from the recall notice and true qualities, characteristics, and ingredients of the Recalled Products. All true qualities, characteristics, and ingredients of the Recalled Products are inferior in comparison to Defendants' advertisements and representations of the Recalled Products.

72. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they have purchased a Recalled Product that is worth less than the price they paid given the potential harm to the consumer and that they would not have purchased at all had they known of the presence or risk of dangerous levels of *Cronobacter Sakazakii*.

73. Plaintiff and the Class seek actual damages, injunctive relief, declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## FOR A FIFTH COLLECTIVE CAUSE OF ACTION

### Unjust Enrichment

### (Plaintiff and Other Members the Class)

74. Plaintiff realleges all preceding paragraphs as if fully set forth herein.

75. Plaintiff brings this count on behalf of herself and other members of the Class.

76. Substantial benefits have been conferred on Defendants by Plaintiff and the Class through purchase of the Recalled Products. Defendants knowingly and willingly accepted and enjoyed these benefits.

77. Defendants either knew or should have known that the payments rendered by Plaintiff and the Class were given and made with the expectation that the Recalled Products would have the qualities, characteristics, ingredients, and suitability for consumption, as represented and warranted by Defendants. As such, it would be unjust for Defendants to retain the benefit of the payments under the circumstances.

78. Defendants' acceptance and retention of these benefits under the alleged circumstances is inequitable.

79. Plaintiff and the Class are entitled to recover all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

80. Plaintiff and the Class seek actual damages, injunctive relief, declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

17

## FOR A SIXTH COLLECTIVE CAUSE OF ACTION

## Violation of North Carolina N.C. Gen. Stat. § 75-1.1, et seq.

### (Plaintiff and Other Members the Class)

81.    Plaintiff realleges all preceding paragraphs as if fully set forth herein.

82.    Plaintiff brings this count on behalf of herself and other members of the Class.

83.    North Carolina Gen. Stat § 75-1.1(a) states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.".

84.    Defendants' misrepresentations and false, deceptive, and misleading statements and omissions with respect to the inclusion of unsafe levels of *Cronobacter Sakazakii* and in the Recalled Products., as described herein, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion and sale of Recalled Products.in violation of North Carolina Gen. Stat § 75-1.1 *et seq.*.

85.    Defendants' false, deceptive, and misleading statements and omissions were and would have been material to any potential consumer's decision to purchase the Recalled Products..

86.    Defendants failed to inform consumers that the Recalled Products contained unsafe levels of *Cronobacter Sakazakii* and/or other harmful ingredients. That information would have been material to any consumer deciding whether to purchase the Recalled Products.

87.    Defendants made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements, and Plaintiff and the Class did rely on such statements and omissions.

18

88.    Upon information and belief, Defendants' misrepresentations and omissions were created, approved, and implemented from its California headquarters.

89.    Plaintiff and the Class suffered an ascertainable loss as a direct and proximate result of Defendants' violations of North Carolina Gen. Stat § 75-1.1 et seq.

90.    Because of Defendants' wrongful actions, Plaintiff and the Class suffered an ascertainable monetary loss based on and measured by the price they paid for the Protein, Supplements, Additives, and Drinks, which they would not have paid in the absence of the aforesaid wrongdoing.

91.    Plaintiff and the Class suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have purchased the potentially unsafe Recalled Products if the true facts concerning unsafe levels of *Cronobacter Sakazakii* and would have been known.

92.    Defendants' sale of Recalled Products containing unsafe levels of *Cronobacter Sakazakii* and for consumption by children was unconscionable, and the misrepresentations and omissions it made regarding the Recalled Products were made for the sole purpose of inducing consumers to purchase the Recalled Products to consume, irrespective of any health consequences. Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard or grossly negligent and reckless with respect to the life, health, safety, and well-being of persons consuming the Recalled Products. Defendants is therefore liable for treble damages and punitive damages, in an amount to be determined at trial.

93.    By reason of the foregoing, Defendants is liable to Plaintiff and the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit N.C. Gen. Stat. § 75-16.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against the Defendants as to each and every count including:

A.  An order declaring this action to be a proper class action, appointing Plaintiff and its counsel to represent the Class, and requiring Defendants to bear the costs of class notice;

B.  An order enjoining Defendants from selling the Protein, Supplements, Additives, and Drinks until the levels of *Cronobacter Sakazakii* are removed or full disclosure of the presence of such appears on all labels, packing and advertising;

C.  An order enjoining Defendants from selling the Recalled Products in any manner suggesting or implying that they are healthy, natural and safe for consumption;

D.  An order requiring Defendants to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.  An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein and injunctive relief to remedy Defendants' past conduct;

F.  An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful,

20

unfair or fraudulent business act or practice, untrue or misleading advertising or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendants to disgorge or return all monies, revenues and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendants to pay punitive damages on any count so allowable;

I.      An order awarding attorney's fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

J.      An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: December 2, 2022

By: */s/Blake G. Abbott*

**POULIN | WILLEY | ANASTOPOULO**
Blake G. Abbott (N.C. Bar No. 57190)
Paul J. Doolittle (*Pro Hac Vice Forthcoming*)
32 Ann Street
Charleston, SC 29403
Tel: (843) 614-8888
Email:
blake@akimlawfirm.com
pauld@akimlawfirm.com

21